UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x
RAJESH SRIRAMAN,                                   :

                              Plaintiff,      :      09-cv-05531-BMC

      -against-                                :

SHASHIKANT PATEL,                                  :

                             Defendant.   :
------------------------------------------------------------------------x

## DEFENDANT'S POST-TRIAL REPLY MEMORANDUM OF LAW

Defendant Shashikant Patel ("Patel") submits this post-trial reply memorandum of law in support of the entry of a final judgment dismissing the complaint of plaintiff Rajesh Sriraman ("Sriraman") in its entirety

## PRELIMINARY STATEMENT

Sriraman failed at trial to establish any substantive cause of action that is not time-barred, or barred for failing to state a prima facie claim, and that could establish any interest of Sriraman in the two disputed agreements. Accordingly, Sriraman's complaint should be dismissed.

I

## SRIRAMAN CANNOT OBTAIN AN ACCOUNTING WITH RESPECT TO THE TWO DISPUTED CONTRACTS UNLESS AND UNTIL HE ESTABLISHES AN INTEREST IN THOSE CONTRACTS THROUGH A SUBSTANTIVE CAUSE OF ACTION

Point I of Patel's previously filed Post-Trial Brief examined the uniform case law holding that a precondition to obtaining an accounting is that the claimant must establish that he has an interest in the property at issue. See Patel Post-Trial Brief, at pp. 2-6. Sriraman's Post-

Trial Memo misleadingly cites several cases that rely upon Partnership Law § 74, which states in full that:

> "The right to an account of his interest shall accrue to any partner, or his legal representative, as against the winding up partners or the surviving partners or the person or partnership continuing the business, at the date of dissolution, in the absence of agreement to the contrary."

A partner does generally have a right upon dissolution to an accounting of his interest in that property in which the partnership had an established interest, such as the partnership's bank account. If Sriraman were claiming that the distributions made by PS were not divided 50:50 (which in fact they were not since Sriraman received more than 50%), he could certainly raise that issue upon dissolution. Such a claim would entail a review and analysis of the partnership's books and records to determine whether the proper distributions were made from the partnership funds.

Patel's counterclaim is a perfect example of the type of claim that only accrues upon dissolution of a partnership. Assuming, arguendo, that Sriraman establishes that he was to share 50:50 with Patel, and recognizing that the exact split each year might vary, a post-dissolution accounting of PS would equal out the final distribution. Patel's counterclaim for an accounting could not be waived during the existence of PS because the right to a final accounting as to distributions from the PS bank account only arose upon dissolution of PS which occurred in 2008.

Sriraman is making an entirely different type of claim. Sriraman is claiming that the two disputed terminated contracts, the Forest Hills Chief of Medicine Agreement ("Chief of Medicine Agreement") (Exhibit P-6) and the Intensive Care Services Agreement ("ICSA") (Exhibit P-3), which were never in the name of PSC, PS or any other partnership, should now - more than seven years after their inception, and which was more than six years before the filing

2

of this action - be deemed long-past partnership opportunities of one of those terminated partnerships. As detailed in Point I of Patel's Post-Trial Brief, Sriraman must establish through some substantive cause of action that he had an interest in the independent assets consisting of the now defunct contracts before any past proceeds from those contracts could ever be included in any partnership accounting. Sriraman cannot accomplish that because each of his causes of action is barred by the statute of limitations and/or for the other reasons stated below and in the papers and proceedings heretofore had herein.

## II

### SRIRAMAN HAS FAILED TO ESTABLISH ANY BREACH OF ANY TERM OF THE ALLEGED ORAL PARTNERSHIP AGREEMENT AND THAT CLAIM IS BARRED BY THE STATUTE OF LIMITATIONS

Sriraman is claiming that he had an oral partnership agreement with Patel. Sriraman never presented any evidence that any term of that partnership agreement required that the Chief of Medicine Agreement and the ICSA be included in the income of the partnership.

It is undisputed that the ICSA had an effective date of July 1, 2003. Pre-Trial Order ("PTO") Undisputed Fact 15. The discussion between Patel and Sriraman concerning the terms of the partnership therefore would have been in or about July 2003 since the ICSA and the relationship with the intensive care unit at Forest Hills Hospital was not effective prior to July 1, 2003. That timing is also consistent with the allegations of the complaint. Sriraman's complaint alleges that PS "was formed … in July 2003" and that "At the time the Partnership was formed, Plaintiff and Defendant agreed to share the Partnership's profits and losses equally." Complaint, at ¶¶ 9 and 12. Sriraman also testified that he became a partner in 2003. Tr. 21/21. Sriraman's employment agreement (Ex. P-1) states that such partnership would occur five years from the

3

effective date of his employment. Since the effective date of Sriraman's employment was July 1, 1997 under the employment agreement, partnership would be on July 1, 2003.

Sriraman presented no evidence whatsoever at trial to establish that any term of the alleged oral partnership agreement made any reference to the Chief of Medicine Agreement or the ICSA, notwithstanding Sriraman's knowledge and belief concerning those two agreements at the time.

Sriraman testified that he was aware of the fact that Patel was Chief of Medicine at Forest Hills Hospital in mid 2003. At that time, Sriraman believed that someone holding that title would have a written contract. At that time, Sriraman also believed that someone holding the title of Chief of Medicine at a significant hospital would possibly receive some compensation. Tr. 83/23-84/18. Sriraman testified that prior to and as of the organization of PS in October 2004, Sriraman never told Patel that any contract Patel had as Chief of Medicine was an opportunity or property of the yet-to-be formed PS partnership. Tr. 84/19-24. Sriraman also conceded at trial that he never performed any services as Chief of Medicine at Forest Hills Hospital. Tr, 96/17-20.

Patel testified that he signed the ICSA after Silverman and Chadha had left PS&C. Tr. 201/11-19. The ICSA had an effective date of July 1, 2003. See Ex. P-3. PS was not organized until October 2004. See Ex. P-2. Sriraman acknowledges that he had in his possession in 2003 a draft of what would become the ICSA. Tr. 83/3-7. See Ex. P-4. Sriraman did not have a copy of any final version of the ICSA, but Sriraman suspected that a final contract had been executed in 2003. Tr. 83/18-22. Sriraman testified that prior to and as of the organization of PS in October 2004, Sriraman never told Patel that any final ICSA contract that Patel had executed was an opportunity or property of the yet-to-be formed PS partnership. Tr. 83/12-17.

4

Since no evidence was presented to establish that any term of the alleged oral partnership agreement made any reference to the Chief of Medicine Agreement or the ICSA, no breach of any term of the oral partnership agreement has been established.

Sriraman's Post-Trial Memo attempts to overcome this failure of proof by citing two inapposite cases. Sriraman cites the decision in Vann v. Kreindler, Relkin & Goldberg, 78 A.D.2d 255, 434 N.Y.S.2d 365 (1st Dep't 1980). In Vann, Vann had been an associate in a law firm and in 1972 was admitted as a partner and signed the written partnership agreement. The partnership dissolved by operation of law in 1974 when a partner, Olick, left the firm. The Vann decision states that: "Here, it is plain that when Olick left there was an agreement to continue operations under the former partnership agreement with Vann." 78 A.D.2d at 260. The Vann decision therefore held that Vann could enforce an arbitration clause that was in the former partnership agreement. By contrast, Sriraman never had a written partnership agreement with Patel at PSC or PS or otherwise. Tr. 91/10-12. No evidence whatsoever was presented at trial by Sriraman that there was any agreement between him and Patel that PS would be governed by a continuation of the written PSC partnership agreement to which Sriraman was never a party. Vann thus has no application to the facts of the instant action.

Sriraman also cites the decision in Wagner v. Etoll, 46 A.D.2d 990, 362 N.Y.S.2d 278 (3rd Dep't 1974). Wagner is a one paragraph decision including one sentence of dictum partially quoted in Sriraman's Post-Trial Memo. That sentence states:

> "Ordinarily, a partnership agreement continues in the absence of a new written agreement after the expiration of its term so long as the actions of the partners indicate implied consent to continue particular provisions of the partnership relationship, even though some of the provisions of the written agreement are disregarded."

Id.

That sentence is dictum since the <u>Wagner</u> court found that the partnership had dissolved by operation of law upon the intervening death of one of the partners and therefore a new partnership had come into existence. In <u>Wagner</u>, a written partnership agreement expired by its own terms on December 31, 1961, but the partnership continued to operate with all of the same partners until 1968 when one of the partners died. The deceased partner's share was purchased by a surviving partner and the partnership continued to operate as before with only certain adjustments. No subsequent written partnership agreement was ever executed. Those circumstances have no application to the instant action. Sriraman never presented any evidence at trial that Patel consented, expressly or impliedly, to continue the PSC partnership agreement - to which Sriraman was never a party – after the formation of PS

Moreover, drawing a comparison between the written PSC partnership agreement, to which Sriraman was never a party, and the alleged oral PS partnership agreement undermines Sriraman's own claims. It is uncontested that Patel directly received the $75,000 per year paid by Parkway Hospital for Patel to serve as Medical Director and that none of that compensation was paid to PSC. Tr. 108/3-25. The other partners in PSC did not object to Patel separately receiving that compensation. <u>Id.</u> It is also uncontested that $100,000 per year of the total $300,000 per year compensation received by Patel pursuant to the ICSA constituted payment for Patel to serve as Medical Director of Forest Hills Hospital. Tr. 151/1-152/5. Sriraman failed to present any evidence at trial that his alleged oral PS partnership agreement included any right to the compensation paid under the ICSA, including the $100,000 annual payment for service as Medical Director. Although PSC was a separate partnership distinct from the later-formed PS, both PSC and PS followed the same practice of excluding Medical Director compensation from being part of partnership revenue. Clearly, the same principle would apply to exclude Patel's

compensation under the Chief of Medicine Agreement from constituting revenue payable to PSC, PS or any other oral partnership claimed by Sriraman.

Sriraman cites New York Partnership Law § 121-1500(d) and an unreported Albany County Supreme Court case for the proposition that, under certain circumstances, a new entity qualifies as a successor partnership and therefore the requirement of re-filing a certificate of registration due to withdrawal of a partner does not apply. Sriraman Post-Trial Reply Memo, at p. 17. A certificate of registration was not "re-filed" by PS, but rather a certificate of registration for PS as a new partnership was filed. Under Sriraman's reading of the law, if he and Patel wanted to simply continue PSC under a new name, no new certificate would have been filed or re-filed. The fact that a new certificate was filed constitutes evidence that PS was in fact, to use Sriraman's own words, "a new partnership." Tr. 27/7-8.

Sriraman has failed to establish any breach of any term of any oral partnership agreement with Patel. In any event, any such claimed breach would be barred by the statute of limitations for the reasons stated in Patel's Post-Trial Memorandum of Law. Accordingly, Sriraman's cause of action for breach of contract should be dismissed.[1]

### III

### SRIRAMAN'S CLAIM FOR BREACH OF FIDUCIARY DUTY IS BARRED BY THE STATUTE OF LIMITATIONS

As noted in Patel's Post-Trial Memo, the three year statute of limitations applies to Sriraman's claim for breach of fiduciary duty because he can only claim money damages with respect to two terminated contracts that he argues should be considered property of a terminated partnership. Sriraman concedes that point in his Post-Trial Memo.

---

[1] Since Sriraman does claim an oral partnership agreement, his cause of action for unjust enrichment is barred for the reasons stated in Patel's previously submitted Post-Trial Memo.

7

In support of the breach of fiduciary duty claim, Sriraman cites cases such as <u>Poss v. Gottlieb</u>, 118 Misc. 318, 321, 193 N.Y.S. 418, 421 (App. Term, 1st Dep't 1922), and <u>R.C. Gluck & Co. v. Tankel</u>, 12 A.D.2d 339, 345, 211 N.Y.S.2d 602, 608 (1st Dep't 1961), for the general proposition that a claim may be made as among partners for the recovery of "secret profits." In <u>Poss</u>, the plaintiff and defendant were partners in a real estate investment that was entirely managed by the defendant. Unbeknownst to the plaintiff, the defendant arranged a deal for sale of the property whereby misrepresentations concerning the property would be made to the plaintiff to coerce the plaintiff into selling his interest at a less than fair value. Once that was accomplished, the defendant sold his interest to the same purchaser for a significant profit which was not shared with the plaintiff. In <u>Gluck</u>, the parties had a joint venture to buy and sell collectible stamps. The defendant misrepresented to the plaintiff that a particular shipment had cost double the actual cost and the defendant kept the extra profit.

Such cases have no application to the instant action in which Sriraman had knowledge and reasonable belief concerning the Chief of Medicine Agreement and the ICSA in 2003.

The Second Circuit has defined the doctrine of equitable tolling as follows:

> "The federal doctrine of equitable tolling of a statute of limitations was developed in the context of actions based on fraud. … Under this doctrine, the statute does not begin to run until the plaintiff either acquires actual knowledge of the facts that comprise his cause of action or should have acquired such knowledge through the exercise of reasonable diligence after being apprised of sufficient facts to put him on notice." (citations omitted)

<u>Cerbone v. ILGWU</u>, 768 F.2d 45, 48 (2nd Cir. 1985).

The Second Circuit has also stated the reason for the tolling rule as applied to fiduciaries is as follows:

> "The reason for such a tolling rule is that the beneficiary should be entitled to rely upon a fiduciary's skill without the necessity of interrupting a continuous relationship of trust and confidence by instituting suit."

Golden Pacific Bancorp v. FDIC, 273 F.3d 509, 519 (2nd Cir. 2001).

In Golden Pacific, the plaintiff owned 90% of the stock in Golden Pacific National Bank, a bank which was closed by the Comptroller of the Currency, and then immediately placed into receivership by the FDIC. One day before the receivership terminated, the plaintiff sued the FDIC claiming several wrongful acts at the time of the closing and during the ten year receivership. The Second Circuit rejected the FDIC's argument that the claims were barred by the statute of limitations. Finding no open repudiation by the FDIC of its fiduciary obligations prior to the termination of the receivership, the Second Circuit held that the statute of limitations accrued when the fiduciary relationship represented by the receivership ended. During the term of the FDIC receivership, without any overt repudiation by the FDIC of its obligations, it would not have been appropriate to interrupt and interfere with the receivership by bringing a lawsuit.

That rationale has no application to the instant action. Prior to and at the formal organization of PS, Sriraman knew that he would receive all payments under the Queens-Long Island Medical Group, P.C. contract ("QLIMG Contract") and that Patel would receive any and all monies paid under the Chief of Medicine Agreement and the ICSA. To the extent that Sriraman believed that he had any interest in the Chief of Medicine Agreement and ICSA, Patel's action in 2003 in not offering and/or agreeing to share the monies paid under those agreements with Sriraman was an open repudiation of any such claimed interest by Sriraman.

In 2003, it is undisputed that Sriraman: (a) understood that he would receive all of the monies paid under the QLIMG Contract; (b) had a draft copy of the ICSA contract and believed that a final contract had been signed; and (c) believed that Patel would have had a contract for his position as Chief of Medicine and would be compensated for holding that position.

Sriraman testified that, in 2003, he had a discussion with Patel in which Patel said that Sriraman would receive all of the monies paid under the QLIMG Contract, despite the fact that the contract was between QLIMG and Patel. Tr. 92/24-94/13. Patel testified that Sriraman was to receive all of the monies paid under the QLIMG Contract because PS would not have any cash to pay Sriraman until PS built up a practice. Tr. 132.

Sriraman testified that he was aware of the fact that Patel was Chief of Medicine at Forest Hills Hospital in mid 2003. At that time, Sriraman believed that someone holding that title would have a written contract. At that time, Sriraman also believed that someone holding the title of Chief of Medicine at a significant hospital would possibly receive some compensation. Tr. 83/23-84/18. Sriraman testified that as of the organization of PS in October 2004, Sriraman never told Patel that any contract Patel had as Chief of Medicine was an opportunity or property of the yet-to-be formed PS partnership. Tr. 84/19-24. That testimony belies any argument that the statute of limitations for Sriraman's claim as to the Chief of Medicine Agreement was tolled by fraudulent concealment.[2]

Patel testified that he signed the ICSA after Silverman and Chadha had left PS&C. Tr. 201/11-19. The ICSA had an effective date of July 1, 2003. See Ex. P-3. PS was not organized until October 2004. See Ex. P-2. Sriraman acknowledges that he had in his

---

[2] Sriraman also conceded at trial that he never performed any services as Chief of Medicine at Forest Hills Hospital. Tr, 96/17-20.

possession in 2003 a draft of what would become the ICSA. Tr. 83/3-7. See Ex. P-4. Sriraman did not have a copy of any final version of the ICSA, but Sriraman suspected that a final contract had been executed in 2003. Tr. 83/18-22. Sriraman testified that as of the organization of PS in October 2004, Sriraman never told Patel that any final ICSA contract that Patel had executed was an opportunity or property of the yet-to-be formed PS partnership. Tr. 83/12-17. That testimony belies any argument that the statute of limitations for Sriraman's claim as to the ICSA was tolled by fraudulent concealment.

In unrebutted testimony, Patel also stated that the difference in compensation from the draft ICSA, which provided for $200,000 per year, and the final ICSA, which provided for $300,000 per year was due to Patel assuming another position. That additional position was as Medical Director. Tr. 151/11-152/5.

Sriraman attempts to avoid the bar of the statute of limitations by citing a few cases for the proposition that a cause of action for breach of fiduciary duty accrues when the fiduciary has openly repudiated his obligation. See cases cited in Sriraman's Post-Trial Memo, at p. 4.

Particularly in light of the treatment of the QLIMG Contract, Sriraman certainly could have argued in 2003 that the ICSA and/or the Chief of Medicine agreement were somehow opportunities of the yet-to-be formed PS and the monies to be made under those agreements should be paid to PS and distributed to Patel and Sriraman. Any such position was openly repudiated by the alleged oral partnership agreement between Patel and Sriraman that did not include any apportionment of any of the monies paid under those agreements and did not provide for any of those monies to be paid to the yet-to-be formed PS. The three year statute of limitations therefore accrued in 2003.

For five years, from 2003 until 2008 when Sriraman left PS, Sriraman never once asserted that he had any interest in the Chief of Medicine Agreement or the ICSA. Only yet another year later, in 2009, did Sriraman assert any claim by the filing of this action. Even then, the complaint in this action contains no mention whatsoever of the Chief of Medicine Agreement. This action was concocted long after the fact, and only after the statute of limitations for Sriraman's purported claims had expired.

## CONCLUSION

For the reasons stated above, and in the papers and proceedings heretofore had herein, including the Pre-Trial Order and the record at trial, final judgment should be entered dismissing Sriraman's complaint in its entirety.

Dated: New York, New York
December 21, 2010

ROBINSON BROG LEINWAND GREENE
GENOVESE & GLUCK P.C.

By: _____
David C. Burger
875 Third Avenue
New York, New York 10022
(212) 603-6361
**Attorneys for Defendant Shashikant Patel**